O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BGI LIFE, INC., a Florida corporation | Case No. CV 09-6822 ODW (AJWx) |
| Plaintiff, | Order **GRANTING** Defendant's Motion for Summary Judgment |
| v. | |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, et al., | |
| Defendants. | |

**I. INTRODUCTION**

Pending before the Court is Defendant American General Life Insurance Company ("Defendant") Motion for Summary Judgment against Plaintiff BGI, Inc. ("Plaintiff"). The Court deems the matter appropriate for decision without oral argument, and for the reasons discussed below, hereby **GRANTS** Defendant's Motion for Summary Judgment. FED. R. CIV. P. 78. L.R. 7-15.

///

## II.  FACTUAL BACKGROUND

**A.     THE LIFE INSURANCE POLICY**

Plaintiff in this case is the owner of a $5 million life insurance policy (the "Policy") for Ms. Sameha Rajab ("Insured"). Defendant sold and issued a term life insurance policy to Insured for $5 million through one of its independent agents in California. In March 2007, Insured converted to a Flexible Premium Adjustable Life Insurance Policy. At the time the Policy was issued to Insured she was 70 years old and was diagnosed with Type II diabetes ("DM") and an enlarged left ventricle in her heart. (SUF at 2.) Because of this, Defendant classified her as "Special", rated her health in "Table 3"[1], and required additional charges when the policy was executed.

**B.     LAPSE AND TERMINATION OF THE POLICY**

Defendant claims it issued a notice of premium payment due on December 8, 2008, informing Plaintiff that "[e]ven though you may have been making regular payments on your policy, the current values are insufficient to cover the monthly charges. . . . This policy is in its grace period and will terminate without value unless a payment of $48,750.00 is received prior to February 8, 2009." (Def.'s Mem. of Points and Authorities at 3.) Plaintiff claims it never received this letter. (Compl. at 5.)

In February 2009, Plaintiff claims it spoke with a phone representative of Defendant regarding the past due premium. (Compl. at 5.) The agent allegedly stated the Policy could be reinstated if a $97,500 payment was received with the reinstatement application. (Compl. at 5.) On February 19, 2009, Plaintiff wired $97,500 to Defendant. (Compl. at 6.) On or about February 19, 2009, Plaintiff mailed in the reinstatement application. (SUF at 4.) On February 20, 2009, Plaintiff claims another phone representative of Defendant's promised Plaintiff that the Policy would be "auto-reinstated", meaning that no additional medical information would be required. (Compl. at 6.)

**C.     THE REINSTATEMENT APPLICATION**

///

---

[1] Table ratings are on a numerical scale that equates higher numbers with higher mortality risk and higher premium charged.

2

On February 24, 2009, Defendant instructed Plaintiff by letter to resubmit an Application for Reinstatement with "Notice-Info","Medical Statements" and $48,750 to "pay the contract". (SUF at 4.) Although Plaintiff notes in the Complaint that the letter was contrary to the discussions with phone representatives, Plaintiff complied with the requests in the letter. (Compl. at 6.) Plaintiff received a second letter dated February 24, 2009, that acknowledged Plaintiff's $97,500 premium payment, but requested Insured's notarized signature for processing, and stated that their Underwriter "may need updated Attending Physician Statements and/or other requirements." (SUF at 4.) On March 3, 2009, Plaintiff faxed a reinstatement application with Insured's notarized signature, and on March 9, 2009 wired the requested $48,750. (Compl. at 7.) On March 13, 2009, Plaintiff faxed Defendant a physician statement from Dr. Wahab who had examined insured on March 14, 2008. (SUF at 6.)

On March 20, 2009, Plaintiff spoke with Mr. Gregory Thornton, AG's Vice President-Underwriting. (SUF at 5.) Mr. Thornton advised Plaintiff that Defendant had received a "trial application"[2] for life insurance for Insured in July 2008 through an independent agent. The "trial application" included a report from Dr. Sam Anabi that made him concerned about Insured's blood pressure and chest pain. (SUF at 6.) Mr. Thorton told Plaintiff's representative that more medical information would be needed to approve the reinstatement application. (SUF at 6.) No additional medical information was provided. (SUF at 6.)

On March 24, 2009 Plaintiff received a letter from Defendant denying reinstatement of the Policy. (SUF at 6.) Defendant refunded premium payments not applied to the Policy in March 2009. (SUF at 7.)

**D.    THE INSTANT ACTION**

On or about September 18, 2009, Plaintiff filed its Complaint alleging breach of contract and the covenant of good faith and fair dealing as well as a claim seeking Injunctive Relief. (SUF at 7;

---

[2]. A trial application allows an insurer to make a tentative offer without requiring a medical exam. Often used if the applicant has previously been rated, postponed, declined, or where the current health is questionable. No collect premium is collected with the application. The underwriter will contact the applicant with a tentative offer, subject to current underwriting requirements.

Compl. at 2.) Defendant contends Plaintiff is entitled to no relief. (Def. Mem. of Points and Auth. at 17 - 25.)

### III. LEGAL STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Evidence the court may consider includes the pleadings, discovery and disclosure materials, and any affidavits on file. Fed. R. Civ. P. 56(c)(2).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986). That burden may be met by "'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 323-34; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Summary judgment is appropriate if a party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp v. Catrett, 477 U.S. at 322.

Only genuine disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; see also *Aprin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (the nonmoving party must present specific evidence from which a reasonable jury could return a verdict in its favor). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

It is not the task of the district court "to scour the record in search of a genuine issue of triable fact. [Courts] rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the

entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F. 2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253.

## IV. DISCUSSION

### A. AMERICAN GENERAL'S MOTION FOR SUMMARY JUDGMENT

Defendant asserts that it is entitled to Summary Judgment on the ground that there are no genuine issue of material fact as to (1) plaintiff's claim for breach of contract; (2) plaintiff's claim for breach of the duty of good faith and fair dealing and (3) plaintiff's claim for injunctive relief.[3] (Def.'s Mot. for Summary Judgment at 2.)

#### 1. Breach of Contract

Defendant moves for summary judgment on a breach of contract claim that arises from Defendant's denial of Insured's Policy reinstatement. In California, the elements of a breach of contract claim are: (1) the existence of a contract; (2) plaintiff's performance thereof or excuse for non-performance; (3) defendant's breach; and (4) the resulting damages. *Rambus Inv. C. Hynix Semiconductor Inc.* 629 F.Supp.2d 979, 1013 (N.D. Cal. 2009); *citing Reichert v. Gen. Ins. Co. Of Am.*, 447 P.2d 377, 381 (1968). Defendants assert that Plaintiff failed to produce sufficient evidence of insurability satisfactory to them, that therefore there was no obligation to reinstate the Policy, and thus there can be no breach of contract claim.

---

[3] Plaintiff's claims for promissory estoppel, negligent misrepresentation and declaratory judgment were abandoned at the August 8, 2011 pretrial conference and dismissed by the court.

We then turn to the language of the contract. The Policy contains a 61-day Grace Period which allows the premium for the Policy to be paid at any within this time. (Pl. Mot. to Compel, Exh. A at 44.) If the premium is not paid within this Grace Period, the Policy will terminate without value, as happened here. (SUF 10.) The contract, however, provides a procedure for reinstatement. The Policy Application does not allow for verbal modification of the contract by any agent of the company[4]. The Reinstatement provision reads:

> Reinstatement. "Reinstating" means placing your policy in force after it has terminated at the end of the grace period. We will reinstate this policy if We receive:
>
> 1. Your written request of reinstatement within 5 years after the end of the grace period and before the maturity date;
>
> 2. Evidence of insurability satisfactory to Us; and
>
> 3. Payment of enough premium to keep the Policy in force for two months, or if less, an amount equal to all past due Monthly Guarantee Premiums; and
>
> 4. Payment of any indebtedness.

(SUF No. 5; Def. Mem. of Points and Auth. at 18.) Because Plaintiff performed the other requirements of the reinstatement provision, the language at issue here is the clause requiring "evidence of insurability satisfactory to" Defendant.

"The overwhelming weight of authority is to the effect that an agreement to reinstate an insurance policy upon 'satisfactory evidence' of insurability does not give the insurer the power to act arbitrarily or capriciously, but that evidence which would be satisfactory to a reasonable insurer is all that is required." *Ryman v. American Nat'l Ins. Co.*, 5 Cal. 3d 620, 632 (1971) (quoting *Kennedy v. Occidental Life Ins. Co.,* 18 Cal. 2d 627 (1941); *Weisz Trucking Co. v. Emil R. Wohl Constr.*, 13 Cal. App. 3d 256, 262 (Ct. App. 1970) ("Evidence of insurability satisfactory to the company, as therein used, means evidence which would satisfy a reasonable person experienced in the life insurance

---

[4] All applicants must sign a waiver on the Policy stating: "I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the insurer's rights and requirements." (Pl. Mot. to Compel, Exh. A at 18.)

6

business that the insured was in an insurable condition."(citations omitted)); *Rosenbloom v. New York Life Ins. Co.*, 65 F. Supp. 692, 696 (D.C. Mo. 1946) ("'Insurability' as a term of art signifies all those physical and moral factors reasonably taken into consideration by life insurance companies in determining coverage or matters affecting the risk."). Indeed, by requesting summary judgment here, Defendant is asking the Court to accept that its denial of reinstatement for Insured was reasonable.

*Plaintiff's Performance the Contract*

In order to have the Policy reinstated, Plaintiff was required to provide "evidence of insurability satisfactory to" Defendant. Defendant argues that Plaintiff failed to do so and the Court agrees.

Defendant notified Defendant of Insured's policy lapse for non-payment of premium by letter on February 9, 2009. (SUF at 4.) On or about February 19, 2009, Plaintiff submitted an application for reinstatement. (SUF at 4.) The application indicated that Insured's last doctor visit was in March 2006 for a check-up, and included a doctors note saying her diabetes was "under control"; no other medical conditions were addressed. (SUF at 4.) By letter dated February 24, 2009, Defendant informed Plaintiff that "once all requirements have been received, your application will be reviewed. If approved, your valuable coverage will be restored to an active status." (SUF at 4.) The reinstatement application was subject to Defendant's underwriting requirements. (SUF at 5.) In a separate letter dated February 24, 2009, Defendant noted that Plaintiff's premium payment of $97,500 was being held pending approval of reinstatement, and advised Plaintiff that underwriting may require additional documentation, including updated Attending Physician Statements. (SUF at 5.)

Insured's reinstatement application was initially reviewed by two underwriters: Mr. Peter Kocis and Mr. Russell Johnson, Director of Underwriting, whose cosign approval was required due to the amount of the policy. (SUF at 5.) Mr. Johnson recommended declining the reinstatement because of Insured's health history and the admitted fact she had not followed-up with a physical since March 2006. (SUF at 5.) As a result, Defendant initially declined the policy reinstatement. (SUF at 5.)

On or about March 13, 2009, a representative for Plaintiff, Mr. Philip Lian, contacted Greg Thorton, Vice President of Underwriting, regarding the Policy. (SUF at 5.) Mr. Thorton explained that the reinstatement application was declined based on Insured's age, medical history and failure to see

7

a doctor in three years. (SUF at 5.) Mr. Thorton offered to review the application further if additional information was provided. (SUF at 6.) On March 13, 2009, Mr. Thorton received a one-page doctor's letter that noted the stability of Insured's diabetes but failed to mention the status of her heart conditions or any recently developed ailments. On March 20, 2009, Mr. Thorton sent an e-mail to Mr. Lian offering to reconsider the application if additional medical records of Insured's heart conditions or other information for review was provided. (SUF at 6.) On March 24, 2009, Defendant denied Insured's application. On March 26, 2009, Mr. Lian responded to Mr. Thorton's March 20 e-mail indicating that they were working on obtaining additional medical records. (SUF at 7.) No medical records were submitted. (SUF at 7.) Rather, on or about September 18, 2009 Plaintiff failed this lawsuit.

Plaintiff was informed that Insured's medical history was a concern to Defendant and would be grounds for denial of reinstatement. The record demonstrates, however, that Plaintiff failed to provide the complete records Defendant requested on at least two separate occasions. Because Plaintiff was informed the reinstatement application would include an underwriting process that may require additional medical records, Plaintiff cannot claim to have performed the contract when this information was consequently not submitted.

*Defendant did not Breach the Contract*

In order for the Court to find a breach of contract, there must be evidence that the Defendant acted "arbitrarily or capriciously" in denying Insured's policy reinstatement. *Ryman*, 5 Cal. 3d at 632. Upon review of the uncontested facts, the Court does not find this to be the case.

It is clear from the record that Defendant proactively attempted to procure additional medical records from Plaintiff to better assess Insured's reinstatement application. While Plaintiff argues that sufficient records were provided, the standard for reinstatement is "evidence of insurability satisfactory to" Defendant. The Court finds that Insured failed to provide the complete medical records that Defendant both requested and needed to grant reinstatement. The Court does not find the internal procedures performed by Defendant's Underwriting department to be unreasonable, and certainly does not find that it rises to the "arbitrary and capricious" standard required by this claim. Based on the evidence available to them, Defendant conducted an objectably reasonable analysis of Plaintiff's

8

reinstatement application, which is all that is required under both the terms of the Policy and California contract law. Consequently, the Court **GRANTS** summary judgment on this issue.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff claims that in violating its contractual obligation to reinstate Insured, Defendant breached its implied duty of good faith and fair dealing. (Compl. at 1.) Defendant moves for summary judgment as to this claim arguing that it exercised an express contractual right to decline reinstatement. Defendant avers that the denial of Insured's Policy was reasonable and without bad faith. (Def. Mem. of Points and Authorities at 1.)

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement . . . [t]his principle is applicable to policies of insurance." *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 658 (1958) (citation omitted). In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding the benefits was unreasonable or without proper cause. *See, e.g.*, *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001). If an insurer unreasonably cancels a policy, it may be held liable on a bad faith breach theory. *See, e.g.*, *Helfand v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 10 Cal. App. 4th 869, 903 (1992) (citing *Spindle v. Travelers Ins. Cos.*, 66 Cal. App. 3d 951, 958 (1977)).

Here, Plaintiff avers that Defendant acted in bad faith by refusing to reinstate the Policy. Particularly, by relying on a "trial application", which Plaintiff claims it was never shown. (Pl.'s Resp. to Def. Mem. of Points and Authorities at 9.) Nonetheless, "a court can conclude as a matter of law that an insurer's denial of claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability." *Lunsford v. Am. Guar. & Liability Ins., Co.*, 18 F.3d 653, 656 (9th Cir. 1994) (citing *Franceschi v. American Motorists Ins. Co.*, 852 F.2d 1217, 1220 (9th Cir. 1988); *see also Guebara*, 237 F.3d at 992 (quoting *Lunsford*, 18 F.3d at 656) (noting that a court can conclude "as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine dispute as to the insurer's liability").

9

Here, Insured is a seventy-plus year old woman with a documented medical history of Type II diabetes and at least one serious heart condition (SUF at 2.) It is reasonable for a question of insurability to exist for an individual with this medical background. Under California law, "[b]ad faith implies unfair dealing rather than mistaken judgment." *See Congleton v. National Union Fire Ins. Co.*, 189 Cal. App. 3d 51, 59 (Ct. App. 1987) (quoting *Cal. Shoppers Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 54-55 (Ct. App. 1985)). It is not unfair for a life insurance company to request additional medical records in assessing reinstatement for an individual with Insured's medical history. Moreover, Plaintiff failed to provide documentation on many of the specific conditions Defendant requested for further consideration of Insured's reinstatement. (SUF at 7.) Accordingly, because there exist "a genuine dispute as to the insurer's liability", *Lunsford*, F.3d at 656, there can be no finding of bad faith.

For these reasons, the Court **GRANTS** Defendant's Summary Judgment for this claim.

### 3. Injunctive Relief

Because the Court has granted summary judgment on the breach of contract claim and breach of the implied Covenant of Good Faith and Fair Dealing, Defendant's request for summary judgment on Plaintiff's claim for Injunctive Relief is also **GRANTED**.

### IV. CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgment is **GRANTED.**.

IT IS SO ORDERED.

August 19, 2011

_____
HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE

10